## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### FORT LAUDERDALE DIVISION
### CASE NO:

RICHARD SANTANA, on behalf of himself
and all others similarly situated,

      Plaintiff(s),

      v.

ANOTHER BROKEN EGG OF AMERICA,
LLC

      Defendant.

_____/

### COLLECTIVE AND CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, RICHARD SANTANA ("Plaintiff") on behalf of himself and all others similarly situated, and pursuant to 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, Fla. Stat. 448.440, and Art. X, Sec. 24 of the Florida Constitution, files this Collective and Class Action Complaint for Damages and Demand for Jury Trial against Defendant, ANOTHER BROKEN EGG OF AMERICA, LLC (referred to as "Defendant"), for failure to pay Servers federal and state minimum wages during the relevant time period, as follows:

### INTRODUCTION

1.     Plaintiff brings this class action under the Fair Labor Standards Act ("FLSA"), Florida Minimum Wage Act ("FMWA"), and Art. X, Sec. 24 of the Florida Constitution on behalf of himself and all Servers in the state of Florida who work or have worked at Another Broken Egg, restaurant owned and operated by Defendant, during the applicable statute of limitations. Defendant committed federal and state minimum wage violations because it: (1) miscalculated the

federal overtime rate for Plaintiff and similarly situated Servers; (2) compensated Servers at the reduced wage for tipped employees, but failed to provide Plaintiff and all others similarly situated with statutory notice of taking a tip credit; (2) required Plaintiff and all others similarly situated to more than occasionally perform improper types, and/or excessive amounts, of non-tipped jobs, and non-serving duties.

## **PARTIES**

2.      During all times material hereto, Plaintiff was a resident of Broward County, Florida, over the age of 18 years, and otherwise *sui juris*.

3.      Plaintiff and the **FLSA putative collective members** are/were restaurant Servers who worked for Defendant within the last three (3) years at Another Broken Egg locations throughout the state of Florida.

4.      Plaintiff and the **FMWA putative class members** are/were restaurant Servers who worked for Defendant within the last five (5) years at Another Broken Egg locations throughout the state of Florida.

5.      Plaintiff worked for Defendant as a Server at the Another Broken Egg restaurant located 175 N. Hiatus Road in Pembroke Pines, Florida 33026 from March 2023 through in or around December 27, 2024.

6.      The proposed collective and class members worked for Defendant in the same capacity as Plaintiff in that they were non-exempt, hourly-paid tipped Servers for Defendant at Another Broken Egg locations throughout the state of Florida.

7.      Plaintiff seeks certification of one (1) collective under 29 U.S.C. § 216(b) for Federal Minimum Wage violations, as follows:

> **Florida Overtime Collective**: All Servers who worked more than 40 hours in one or more workweeks for Defendant at Another Broken

**Egg locations throughout the state of Florida for the past three (3) years.**

8.      Plaintiff seeks certification of two (2) separate classes under Fed. R. Civ. P. 23, the FMWA, and Florida Constitution for Florida Minimum Wage violations, as follows:

> **Tip Notice Class: All Servers who worked for Defendant in the state of Florida during the five (5) years preceding this lawsuit who did not receive proper notice from Defendant that it would be taking a tip credit pursuant to Fla. Const. Art. X 24(c) and/or F.S. § 448.110.**
>
> **Dual Jobs Class: All Servers who worked for Defendant in the state of Florida during the previous five (5) years preceding this lawsuit, who were required to perform more than occasional non-tipped jobs/work and non-serving duties during any shift and were paid a reduced tip credit wage for time spent working such non-tipped jobs/work.**

9.      The precise size and identity of each class should be ascertainable from the business records, tax records, and/or personnel records of Defendant; however, Plaintiff estimates that the total number of class members in each class exceeds 50 Servers.

10.     Defendant was the "employer" of Plaintiff and all members of the putative Collective and Classes as that term is defined by the FLSA and FMWA during all times pertinent to the allegations herein.

11.     During all times material hereto, Defendant was vested with control and decision-making authority over the hiring, firing, scheduling, day-to-day operations, and pay practices that occurred at Another Broken Egg locations throughout the state of Florida.

12.     Defendant implements uniform pay, tip, and time-keeping practices at Another Broken Egg locations throughout the state of Florida that apply to Plaintiff and all similarly situated Servers.

13.     Plaintiff and the putative collective and class members are/were non-exempt, hourly Servers.

## JURISDICTION AND VENUE

14.     This action is brought under 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, the Florida Minimum Wage Act ("FMWA") and Article X Section 24 of the Florida Constitution to recover damages from Defendant.

15.     This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

16.     The acts and/or omissions giving rise to this dispute took place within Broward County, Florida, which falls within the jurisdiction of this Honorable Court.

17.     Defendant regularly transacts business in Broward County, Florida, and jurisdiction is therefore proper.

18.     Venue is also proper within Broward County, Florida.

19.     Plaintiff fulfilled all conditions precedent required to bring his class action claims under the FMWA.

20.     More specifically, on June 9, 2024, Plaintiff, through his counsel, served Defendant with a written pre-suit demand notice regarding his FMWA claims, requesting Defendant to pay his and the putative FMWA classes the minimum wages owed to them. Defendant refused to pay Plaintiff or the FMWA classes any wages whatsoever.

## FLSA COVERAGE

21.     Defendant is an enterprise covered by the FLSA by virtue of the fact that it is an enterprise engaged in commerce or in the production of goods for commerce, in that Defendant had at least two or more employees engaged in commerce or in the production of goods for

commerce, or two (2) or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

22.     During all time periods pertinent hereto, Defendant's employees regularly handled goods and materials such as food, beverages, napkins, silverware, appliances, eggs, rice, meat, chicken, pork, cheese, broccoli, carrots, peas, oil, zucchini, onions, peppers, shrimp, beef, steak, potatoes, bread, hot sauce, buns, salt, other food items, restaurant equipment, chairs, tables, vacuum cleaners, pens, paper, receipts, computers, credit card processors, staples, toothpicks, flour, sugar, coffee, tea, soda, water bottles, and other goods and materials that had previously travelled through interstate commerce.

23.     Defendant had gross annual revenue in excess of $500,000.00 in 2020, 2021, 2022, 2023, 2024 and is expected to have gross annual revenue in excess of $500,000.00 in 2025.

## GENERAL ALLEGATIONS

### DEFENDANT COMPENSATES PLAINTIFF AND ALL OTHER SERVERS IN THE STATE OF FLORIDA THE INCORRECT OVERTIME RATES WHEN THEY WORK MORE THAN 40 HOURS IN A WORKWEEK

24.     When a Server employed at a Another Broken Egg restaurant works more than 40 hours in a workweek, the Defendant pays the Server 1.5 times the **reduced hourly wage** instead of 1.5 times the regular hourly rate.

25.     For example, during the pay period of May 1, 2023, through May 14, 2024, Plaintiff worked a total of 75.02 hours. This included .15 hours of overtime work in one of the workweeks. During this workweek, Defendant paid Plaintiff a reduced hourly wage of $7.98[1] per hour for the first 40 hours worked. Defendant paid Plaintiff an hourly overtime rate of $11.97 for .15 overtime

---

[1] In May 2023, the applicable minimum wage in the State of Florida was $11.00 per hour. The maximum tip credit permitted in the State of Florida is $3.02 per hour.

hours worked, which is 1.5 times Plaintiff's reduced hourly wage of $7.98. The regular hourly rate during this pay period was $11.00 and the federal overtime premium should have been $16.50. If Defendant were entitled to take a tip credit (which they were not), the applicable overtime rate would have been $13.48 per overtime hour. Defendant paid Plaintiff an incorrect overtime hourly rate of $11.97 instead of the correct overtime rate of $13.48 per hour.

26.     Under federal law, "[t]he general overtime pay standard in Section 7(a) requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed." *See* 29 C.F.R. § 778.107.

27.     "When overtime is worked by a tipped employee who is subject to the overtime pay provisions of the Act, the employee's regular rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid…" *See* 29 C.F.R. § 531.60. "In accordance with Section 3(m)(2)(A), a tipped employee's regular rate of pay includes the amount of tip credit taken by the employer per hour (not in excess of the minimum wage required by section 6(a)(1) minus the cash wage paid (at least $2.13))… Any tips received by the employee in excess of the tip credit need not be included in the regular rate." *Id.*

28.     Defendant miscalculated the federal overtime wages owed to Servers who worked at Another Broken Egg restaurants throughout Florida during the past 3 years.

29.     Although Defendant was aware of the requirements of the FLSA, and the pertinent regulations thereto, Defendant willfully and/or intentionally failed to pay Plaintiff and the putative collective members in accordance with federal law.

30.     Defendant willfully and/or intentionally violated the requirements of the FLSA, because Defendant had access to publicly available information on the Department of Labor's website, which it could have accessed for free, to determine whether its pay policies were compliant with federal law. Defendant failed to do so.

## DEFENDANT FAILED TO PROVIDE SERVERS WITH SUFFICIENT NOTICE OF THE TIP CREDIT

31.     When Defendant hires Servers, it credits a portion of Servers' tips toward its minimum wage obligations, and, consequently, it pays below the applicable state minimum wage.

32.     Nevertheless, Defendant fails to provide such Servers the required and sufficient notice of the tip credit under Florida law.

33.     During all times material hereto, Defendant **did not**: (1) provide the full statutorily required tip notice under Florida law; (2) pay the applicable Florida minimum wage; or (3) track the time Servers spent performing side work and non-tipped duties.

34.     Plaintiff and the *Tip Notice Class* members are entitled to recover at least the Florida minimum wage for each hour spent performing work.

35.     Moreover, during all times material hereto, Defendant claimed a tip credit under Florida law and paid Plaintiff and all other Servers the reduced wage for tipped employees, including during shifts when they spent a substantial amount of continuous time performing directly supporting side work.

## DEFENDANT REQUIRES SERVERS TO MORE THAN OCCASIONALLY PERFORM IMPROPER TYPES, OR EXCESSIVE AMOUNTS, OF NON-TIPPED JOBS/WORK AND NON-SERVING DUTIES

36.     During all times material hereto, Defendant required Plaintiff and all other Servers to perform non-tipped duties and side-work at the beginning of their shift for at least one (1) hour, and at the end of their shift for at least two (2) hours.

37.     Plaintiff and all other Servers often spend up to one (1) continuous hour at the opening and two (2) hours after the closing of their shifts, when Another Broken Egg are not opened to the public, performing non-tipped side-work and duties.

38.     When no customers are present, Defendant requires Servers to perform a variety of non-tipped jobs and other duties which are not part of their tip-producing Server jobs.

39.     These non-tipped duties include: stacking and unstacking chairs in the dining room and outside on the patio, making coffer and iced tea, replacing syrup containers for soda machines, cleaning soda dispensers, rolling tubs of silverware, filling table caddies with condiments and seasonings, sweeping floors, hauling ice to a from freezers, filling up ice buckets throughout the restaurant, restocking glassware, polishing glassware, cleaning floors, and cleaning menus.

40.     When Plaintiff and all other Servers are performing related and/or unrelated side-work and preparation duties they are compensated a sub-minimum wage.

## DEFENDANT FAILS TO COMPLY WITH ELEVENTH CIRCUIT INTERPRETATION AND APPLICATION OF DUAL JOBS REGULATION, 29 C.F.R. § 531.56

41.     On September 15, 2021, the United States Court of Appeals for the Eleventh Circuit held that the Dual Jobs Regulation, 29 C.F.R. § 531.56, is "genuinely ambiguous concerning the amount of time a 'tipped employee' can spend doing untipped but related duties and concerning what tasks constitute related duties." *See Rafferty v. Denny's, Inc.,* 13 F.4th 1166, 1179 (11th Cir. 2021).[2]

---

[2] On August 23, 2024, the Fifth Circuit Court of Appeals vacated 29 C.F.R. § 531.56(f) ("Final Rule"), on the basis that it was arbitrary, capricious and contrary to FLSA's text. *See Restaurant Law Center v. U.S. Dept. of Labor,* 2024 WL 3911308 (5th Cir. Aug. 23, 2024). However, the 5th Circuit specifically held its rejection of the Final Rule "in no way… bear[s] on the validity of the dual-jobs regulation, which is not challenged." *Id.* at *8. Importantly, in *Restaurant Law Center,* the appellant "stated at oral argument that the dual-jobs regulation is 'mostly fine.'" *Id.* at n.10. Moreover, the 5th Circuit does not address *Rafferty's* interpretation and application of the dual-jobs regulation. *Id.* Instead, the 5th Circuit cites *Rafferty* but narrows its focus to the court's decision

42.     The Eleventh Circuit further held that "[w]hen we employ the traditional tools of interpretation to determine the meaning of the dual-jobs regulation, we conclude that the regulation prohibits employers from taking the tip credit for hours when an employee performed unrelated duties or performed related duties for more than twenty percent of her time." *Id.* at 1188.

43.     Accordingly, employers in the Eleventh Circuit are forbidden from taking a tip credit when they compel tipped employees, like Plaintiff, to perform unrelated duties or spend more than 20% of their workweek performing unrelated duties.

44.     During all times material hereto, Defendant required Plaintiff and its similarly situated Servers to perform unrelated duties and related side work duties for more than 20% for the workweek.

45.     For example, Plaintiff worked approximately thirty-five (35%) percent of his workweek performing non-tipped side duties.

46.     Plaintiff and the **Dual Jobs Class** members are entitled to recover at least Florida minimum wage for more than occasional or excessive amounts of non-tipped work and non-serving duties.

47.     Plaintiff and the putative class members performed the same or substantially similar side work for Defendant and were otherwise paid in an identical manner by Defendant.

48.     Although Defendant was aware of the requirements of the FLSA, and the pertinent regulations thereto, and knew or should have known of the FLSA's requirements, and Defendant

---

to not extend *Auer* deference to a 2018 revision to the Field Operations Handbook because the revision was not a "reasonable interpretation of the regulation." *Id.* at *4. The 5th Circuit ignores that the 11th Circuit held the 20% limitation was a reasonable interpretation of the Dual Jobs regulation. This is still controlling in the Eleventh Circuit.

willfully and/or intentionally failed to pay Plaintiff and the putative class members in accordance with Florida law.

## CLASS ALLEGATIONS

49.     Class members are treated equally and similarly at Another Broken Egg restaurants in Florida that are owned and operated by Defendant, in that they were denied state minimum wages despite the fact that Defendant did not provide the required and sufficient notice of the tip credit under Florida law.

50.     Class members are treated equally and similarly at the Another Broken Egg restaurants in the state of Florida that are owned and operated by Defendant, in that they were denied state minimum wages when they spent more than 20% of a workweek performing "non-tipped" duties and side work.

51.     Defendant employed at least fifty (50) Servers who were paid a reduced tip credit wage and were not provided with the required nor sufficient notice of the tip credit under Florida law during the past five (5) years.

52.     Defendant employed at least fifty (50) Servers who were paid a reduced tip credit wage and were required to spend more than 20% of their workweek performing non-tipped duties and side work during the past five (5) years.

53.     At all times material hereto, Defendant has express or constructive knowledge of the work performed by Plaintiff and all other similarly situated Servers.

54.     Moreover, at all times material hereto, Defendant had express or constructive knowledge of the time Plaintiff and other similarly situated employees worked but failed to keep and maintain accurate time records, thereby violating state law.

55.     Plaintiff and the class members performed the same or substantially similar job duties for Defendant at Another Broken Egg restaurants in Florida, as Servers, and were otherwise paid in an identical manner by Defendant and were subject to the same employment policies.

56.     Plaintiff and the class members performed the same or substantially similar side work for Defendant at the Another Broken Egg restaurants.

57.     Although Defendant was aware of the requirements of the Florida Constitution and FMWA, and the pertinent regulations thereto, Defendant willfully and/or intentionally failed to pay Plaintiff and the class members in accordance with state law.

## COUNT I – COLLECTIVE ACTION
## FEDERAL OVERTIME WAGE VIOLATIONS
### (FLORIDA OVERTIME COLLECTIVE)

58.     Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 57 as though set forth fully herein.

59.     Plaintiff was entitled to be paid federal overtime wages in one or more workweeks when he worked over 40 hours in a workweek during his employment with Defendant.

60.     Under the FLSA, the Defendant was required to compensate Plaintiff 1.5 times his regular hourly rate for any hours worked over 40 in a workweek.

61.     Instead of compensating Plaintiff 1.5 times him regular hourly rate, the Defendant compensated Plaintiff 1.5 times the reduced wage they were paying to him, and therefore violated federal law.

62.     Defendant uniformly applied and enforced this unlawful overtime policy, and incorrectly compensated its Servers throughout the state of Florida when they worked over 40 hours in a workweek.

63.     Pursuant to 29 U.S.C. § 216(b), Plaintiff seeks to recover federal overtime wages for himself and the following similarly situated Florida Overtime Collective:

**Florida Overtime Collective: All Servers who worked more than 40 hours in one or more workweeks for Defendant at Another Broken Egg locations throughout the state of Florida for the past three (3) years.**

64.     Defendant enacted and enforced unlawful policies that were applied uniformly to all Servers who worked over 40 hours in a workweek.

65.     Defendant attempted to rely on the FLSA's tip credit when it compensated Servers in the state of Florida.

66.     However, when Servers worked more than 40 hours in a workweek, the Defendant failed to properly calculate the federal overtime wages owed to Servers, which resulted in uniform and systematic pay violations throughout the state of Florida during the past 3 years.

67.     Plaintiff and the putative collective of Servers are therefore entitled to receive the full federal overtime wages for every overtime hour worked during the past 3 years.

68.     Defendant knew Plaintiff had performed overtime work but willfully failed to pay Plaintiff the full federal overtime wages owed, contrary to the FLSA.

69.     As a direct and proximate result of Defendant's deliberate underpayment of wages, Plaintiff has been damaged in the loss of federal overtime wages for one or more weeks of work during his employment with Defendant.

70.     Defendant's willful and/or intentional violations of law entitle Plaintiff to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, RICHARD SANTANA, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, ANOTHER BROKEN EGG OF AMERICA, LLC, and award Plaintiff, and all others similarly situated: (a) unpaid federal overtime wage damages to be paid by Defendant; (b) liquidated damages to be paid by Defendant; (c) all reasonable attorney's fees and litigation costs as permitted under the FLSA to be paid by

Defendant; and any and all such further relief as this Court deems just and reasonable under the circumstances.

### COUNT II –CLASS ACTION
### FOR FLORIDA MINIMUM WAGE VIOLATIONS
### (TIP NOTICE CLASS)

71.     Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 57 as though set forth fully herein.

72.     Defendant violated the terms of Fla. Stat. § 448.110 and the Florida Constitution's minimum wage requirements by taking a tip credit toward the applicable Florida minimum wage but by failing to provide Plaintiff and the putative class members the statutorily required tip notice for the past five (5) years. The Florida tip credit requirements are modeled after the FLSA.

73.     Defendant therefore forfeits any tip credit under Florida law and owes each Server *at least* $3.02 for each hour of work they performed within the past five (5) years.

74.     On June 9, 2024, and through his counsel, Plaintiff served Defendant with a written pre-suit notice and demand pursuant to Fla. Stat. § 448.110, on behalf of himself, and a class of all similarly situated Servers.

75.     More than fifteen (15) calendar days have elapsed since Plaintiff served Defendant with his written pre-suit notice and demand and as the date and time of this filing, Defendant has failed to tender full payment to Plaintiff and the class.

76.     In 2019, the Florida minimum wage was $8.46 per hour.

77.     In 2020, the Florida minimum wage was $8.56 per hour.

78.     From January 1, 2021, through September 29, 2021, the Florida minimum wage was $8.65 per hour.

79.    From September 30, 2021, through September 29, 2022, the Florida minimum wage was $10.00 per hour.

80.    From September 30, 2022, through September 29, 2023, the Florida minimum wage was $11.00 per hour.

81.    From September 30, 2023, through September 29, 2024, the Florida minimum wage is/was $12.00 per hour.

82.    From September 30, 2024, through the present, the Florida minimum wage is/was $13.00 per hour.

83.    Plaintiff and the proposed Tip Notice Class members are/were subjected to similar violations of the FMWA and Florida Constitution.

84.    Plaintiff seeks class certification under Fed. R. Civ. P. 23 of the following class for Defendant's failure to pay Florida minimum wages:

> **All Servers who worked for Defendant in the state of Florida during the five (5) years preceding this lawsuit who did not receive proper notice from Defendant that it would be taking a tip credit pursuant to Fla. Const. Art. X 24(c) and/or F.S. § 448.110.**

### FED. R. CIV. P. 23 CLASS ALLEGATIONS

85.    Plaintiff brings this FMWA claim as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the above class (the "Tip Notice Class").

86.    The putative Tip Notice Class members are treated equally and similarly by Defendant, in that they were denied full and proper Florida minimum wages based on Defendant's failure to provide Plaintiff and similarly situated Servers proper notice of Defendant's intent to rely upon a tip credit under Florida law.

87.    *Numerosity*: Defendant employed in excess of fifty (50) Servers during the past five (5) years who were not provided the required tip notice; nevertheless, Defendant claimed a tip credit for these employees. Given Defendant's considerable size and systematic nature of their failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

88.    Plaintiff and the Tip Notice Class members were subject to the same employment policies.

89.    *Commonality*: Common questions of law and fact exist as to all members of the Class and such questions predominate over any questions solely affecting any individual member of the Class, including Plaintiff. Such questions common to the class include, but are not limited to, the following: (a) whether Plaintiff and the Tip Credit Class were "employees" of Defendant; (b) whether Plaintiff's and the Tip Credit Class's hours were properly recorded; (c) whether Defendant violated the Florida minimum wage rights of Plaintiff and the Tip Notice Class under the FMWA by failing to provide sufficient notice of taking a tip credit; (d) whether Defendant willfully or intentionally refused to pay Plaintiff and the Tip Notice Class the Florida minimum wages as required under Florida law; (e) whether Defendant knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll practices; and (f) the nature, extent, and measure of damages suffered by the Plaintiff and the Tip Notice Class based upon Defendant's conduct.

90.    *Typicality*: Plaintiff's claims are typical of the claims of the members of the Tip Notice Class. Plaintiff's claims arise from Defendant's company-wide policy of paying all Servers a reduced wage without providing the statutorily required notice of taking a tip credit.

91. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Tip Notice Class. Plaintiff has no interest that might conflict with the interests of the Tip Notice Class. Plaintiff is interested in pursuing his claims against Defendant vigorously and has retained counsel competent and experienced in class and complex litigation.

92. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to arise in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

93. Defendant has acted on grounds generally applicable to the Tip Notice Class, thereby making relief appropriate with respect to the Tip Notice Class as a whole. Prosecution of separate actions by individual members of the Tip Notice Class would create the risk of inconsistent or varying adjudications with respect to the individual members of the Tip Notice Class that would establish incompatible standards of conduct for Defendant.

94. Without a class action, Defendant will likely continue to retain the benefit of their wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the Tip Notice Class.

95. Plaintiff and the Tip Notice Class members performed the same job duties, as Servers, and were paid in an identical manner by Defendant based on Defendant's failure to provide Plaintiff and the Tip Notice Class members the appropriate tip credit notice when Defendant claimed a tip credit.

96.     Plaintiff and the Tip Notice Class members were not paid proper Florida minimum wages during the relevant time period.

97.     Defendant either willfully chose not to comply with the FMWA's tip credit laws, and deliberately failed to pay the Tip Notice Class properly, or failed to make an adequate inquiry into whether its conduct was in compliance with the FMWA. As a result, Defendant either knew, or showed reckless disregard for, the pertinent Tip Credit laws under the FMWA.

98.     Defendant was aware of the requirements of the FMWA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the Tip Notice Class members in accordance with the law.

99.     The precise size and identity of the class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendant; however, Plaintiff estimates that the total number of putative Tip Notice Class members exceeds fifty (50) Servers.

100.     This action is intended to include each and every Server who worked at Defendant's restaurant in the state of Florida during the past five (5) years who was not provided the requisite tip credit notice during any workweek.

101.     During all times material hereto, Plaintiff and all Tip Notice Class members were non-exempt employees of Defendant.

102.     Plaintiff and the Tip Notice Class members performed work as Servers, which was an integral part of Defendant's business.

103.     Defendant violated the FMWA and the Florida Constitution's provision on minimum wages by not providing Plaintiff and the putative Tip Notice Class members the requisite tip credit notice.

104.    The additional persons who may become Plaintiffs in this action are employees with positions similarly situated to Plaintiff and who suffered from the same pay practices of not being properly paid at least Florida's minimum wage for each hour worked due to Defendant's failure in providing an adequate tip credit notice.

105.    Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendant a pre-suit Florida Minimum Wage demand letter as required by Florida law before this claim was filed.

106.    A class action suit, such as this one, is superior to other available means for the fair and efficient adjudication of the lawsuit. The damages suffered by individual members of the class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the class to individually seek redress for the wrongs done to them.

107.    A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, many members of the class likely will not obtain redress of their damages and Defendant will retain the proceeds of their violations of the FMWA and Florida Constitution.

108.    Furthermore, even if every member of the class could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

109.    The relief sought is common to the entire class including, among other things: (a) payment by Defendant of actual damages caused by their failure to pay minimum wages pursuant to the Florida Constitution and/or Fla. Stat. § 448.110; (b) payment by Defendant of liquidated damages caused by their failure to pay minimum wages pursuant to the Florida Constitution and/or

Fla. Stat. § 448.110 as a result of Defendant's intentional and/or willful violations; and (c) payment by Defendant of the costs and expenses of this action, including reasonable attorney's fees of Plaintiff's counsel.

110.    Plaintiff and the Tip Notice Class members have sustained damages arising out of the same wrongful and company-wide employment policies of Defendant in violation of the FMWA and the Florida Constitution.

111.    Defendant's willful and/or intentional violations of state law entitle Plaintiff and the putative Tip Notice Class members to an additional amount of liquidated, or double, damages.

WHEREFORE, Plaintiff, RICHARD SANTANA, respectfully requests that this Honorable Court enter judgment in his favor against Defendant, ANOTHER BROKEN EGG OF AMERICA, LLC, and award Plaintiff, and the putative class: (a) unpaid Florida minimum wages to be paid by Defendant; (b) the tip credit unlawfully taken by Defendant; (c) liquidated damages to be paid by Defendant; (d) all reasonable attorney's fees and litigation costs permitted by the Florida Constitution and Fla. Stat. § 448.110 to be paid by Defendant; and any and all such further relief as the Court deems just and reasonable under the circumstances.

### COUNT III –CLASS ACTION
### FOR FLORIDA MINIMUM WAGE VIOLATIONS
### (DUAL JOBS CLASS)

112.    Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 57 as though set forth fully herein.

113.    Defendant claimed a tip credit under Florida law for each hour of work performed by Plaintiff and all other Servers during the previous five (5) years.

114.    Plaintiff and all other similarly situated Servers are/were entitled to be paid Florida's full minimum wage during their employment with Defendant.

115.    Plaintiff and the proposed class members were subjected to similar violations of Florida law as a result of Defendant's failure to pay them the full state minimum wage when they were required to spend more than 20% of their workweek performing non-tipped duties and side work.

116.    Plaintiff seeks recovery of Florida minimum wages under Fed. R. Civ. P. 23 for himself and the following class for Defendant's failure to pay constitutionally mandated state minimum wages:

> **Dual Jobs Class: All Servers who worked for Defendant in the state of Florida during the previous five (5) years preceding this lawsuit, who were required to perform more than occasional non-tipped jobs/work and non-serving duties during any shift and were paid a reduced tip credit wage for time spent working such non-tipped jobs/work.**

### FED. R. CIV. P. CLASS ALLEGATIONS

117.    Plaintiff brings his FMWA claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the above class.

118.    The putative Dual Jobs Class members are treated equally and similarly by Defendant, in that they were denied Florida minimum wages during the previous five (5) years based upon Defendant requiring Plaintiff and similarly situated Servers to spend more than 20% of their workweeks performing non-tipped duties and side work.

119.    *Numerosity:* Defendant employed at least fifty (50) Servers at Another Broken Egg restaurants throughout Florida during the past five (5) years who were required to spend more than 20% of their workweeks performing non-tipped duties and side work and were not paid the pertinent Florida minimum wage.

120.    Given Defendant's size and the systematic nature of its failure to comply with Florida law, the members of the Class are so numerous that joinder of all members is impractical.

121.     Plaintiff and the Dual Jobs Class members were victims of the same policies, including Defendant's requirement that employees spend more than 20% of each workweek performing non-tipped duties and side work.

122.     *Commonality:* Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting any individual member of the Class, including Plaintiff. Such questions common to the Class include, but are not limited to the following: (a) whether Plaintiff and the Dual Jobs Class members were "employees" of Defendant; (b) whether Plaintiff and the Dual Jobs Class's hours were properly recorded; (c) whether Defendant violated the Florida minimum wage rights of Plaintiff and the Dual Jobs Class under the FMWA and Florida Constitution by failing to compensate the putative class the full state minimum wage when they spent more than 20% of their workweek performing non-tipped duties and side work; (d) whether Defendant willfully or intentionally refused to pay Plaintiff and the Dual Jobs Class Florida minimum wages; (e) whether Defendant knew or should have known of the Florida minimum wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll and time keeping practices; and (f) the nature, extent, and measure of damages suffered by Plaintiff and the Dual Jobs Class.

123.     *Typicality:* Plaintiff's claims are typical of the claims of the members of the Dual Jobs Class.  Plaintiff's claims arise from Defendant's company-wide policy of claiming a tip credit for all Servers and requiring them spend more than 20% of their workweek on non-tipped duties and side work.

124.     *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Dual Jobs Class.  Plaintiff has no interest that might conflict with the interests of the Dual Jobs Class.

Plaintiff is determined to pursue his claims against Defendant vigorously and has retained counsel competent and experienced in class and employment litigation.

125.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

126.    Defendant acted on grounds generally applicable to the Dual Jobs Class, thereby making relief appropriate with respect to the Dual Jobs Class as a whole. Prosecution of separate actions by individual members of the Dual Jobs Class would create the risk of varying adjudications with respect to the individual members of the Dual Jobs Class that would establish incompatible standards of conduct for Defendant.

127.    The identity of the Dual Jobs Class is readily identifiable from Defendant's records.

128.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, many members of the class likely will not obtain redress of their damages and Defendant will retain the proceeds of its violations of the FMWA and Florida Constitution.

129.    Furthermore, even if every member of the Dual Jobs Class could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system.  Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

130.     Plaintiff and the Dual Jobs Class members performed the same job duties, as restaurant Servers, and were paid in an identical manner by Defendant based on Defendant requiring restaurant Servers to spend more than 20% of shifts and workweeks on non-tipped duties and side work without paying restaurant Servers at least the full applicable Florida minimum wage.

131.     This action is intended to include each and every restaurant Server who worked for Defendant at Another Broken Egg restaurants located in the state of Florida during the past five (5) years who was required to spend more than 20% of their workweek performing non-tipped duties and side work.

132.     During all material times hereto, Plaintiff and all Dual Jobs Class members are/were non-exempt, tipped employees of Defendant.

133.     Servers' work for Defendant is an integral part of Defendant's business.

134.     In 2019, the Florida minimum wage was $8.46 per hour.

135.     In 2020, the Florida minimum wage was $8.56 per hour.

136.     From January 1, 2021, until September 29, 2021, the Florida minimum wage was $8.65 per hour.

137.     From September 30, 2021, through the September 29, 2022, the Florida Minimum Wage was $10.00 per hour.

138.     From September 30, 2022, through September 29, 2023, the Florida Minimum Wage was $11.00 per hour.

139.     From September 30, 2023, through September 29, 2024, the Florida Minimum Wage was/is $12.00 per hour.

140.     From September 30, 2023, through the present, the Florida Minimum Wage was/is $13.00 per hour.

141.    Plaintiff has complied with pre-suit notice, and all other conditions precedent to this action have been performed, or waived, by sending Defendant a Florida minimum wage demand before this claim was filed.

142.    More than fifteen (15) calendar days have passed since Defendant received the Florida minimum wage demand letter and no payment has been tendered by Defendant to compensate Plaintiff and the putative Dual Jobs Class for the minimum wages owed.

143.    The relief Plaintiff seeks is common to the entire class including, inter alia: (a) payment by the Defendant of actual damages caused by its failure to pay minimum wages pursuant to the Florida Minimum Wage Act and Florida Constitution; (b) payment by the Defendant of liquidated damages caused by its intentional and/or willful failure to pay minimum wages pursuant to the Florida Minimum Wage Act and Florida Constitution; (c) payment by the Defendant of the costs and expenses of this action, including attorney's fees and costs of Plaintiff's counsel.

144.    Defendant either willfully chose not to comply with the FMWA's Dual Jobs laws, and deliberately failed to pay the Dual Jobs Class properly, or failed to make an adequate inquiry into whether its conduct was in compliance with the FMWA. As a result, Defendant either knew, or showed reckless disregard for, the pertinent Dual Jobs laws under the FMWA.

145.    Defendant was aware of the requirements of the FMWA, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the Dual Jobs Class members in accordance with the law.

146.    Defendant's willful and/or intentional violations of state law entitle Plaintiff and the putative Dual Jobs Class members to an additional amount of liquidated, or double, damages.

147.    As a direct and proximate result of Defendant's deliberate underpayment of wages, Plaintiff and the Dual Jobs Class members have been damaged in the loss of Florida minimum wages for one or more weeks of work during their employment with Defendant.

WHEREFORE, Plaintiff, RICHARD SANTANA, respectfully requests that this Honorable Court enter judgment in his favor against Defendant, ANOTHER BROKEN EGG OF AMERICA, LLC, and award Plaintiff, and the putative class: (a) unpaid Florida minimum wages to be paid by Defendant; (b) the tip credit unlawfully taken by Defendant; (c) liquidated damages to be paid by Defendant; (d) all reasonable attorney's fees and litigation costs permitted by the Florida Constitution and Fla. Stat. § 448.110 to be paid by Defendant; and any and all such further relief as the Court deems just and reasonable under the circumstances.

**Date: March 26, 2025**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS-
JORDAN RICHARDS, PLLC**
1800 SE 10th Ave, Suite 205
Fort Lauderdale, Florida 33316
Ph: (954) 871-0050
*Co-Counsel for Plaintiff*

**JONATHAN S. MINICK, P.A.**
169 E. Flagler St. Suite 1600
Miami, Florida 33131
Ph: (786) 441-8909
*Co-Counsel for Plaintiff*

By: */s/ Michael V. Miller*
   MICHAEL MILLER, ESQUIRE
   Florida Bar No. 64005
   JORDAN RICHARDS, ESQUIRE
   Florida Bar No. 108372
   Michael@usaemploymentlawyers.com
   Jordan@jordanrichardspllc.com

By: */s/ Jonathan S. Minick*
   JONATHAN S. MINICK, ESQUIRE
   Florida Bar No.: 88743
   *jminick@jsmlawpa.com*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on March 26, 2025.

By: */s/ Michael V. Miller*

MICHAEL V. MILLER, ESQUIRE
Florida Bar No. 0064005

**<u>SERVICE LIST</u>**