UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO: 0:25-cv-60580-RS

RICHARD SANTANA, on behalf of himself
and all others similarly situated,

       Plaintiff(s),

       v.

ANOTHER BROKEN EGG OF AMERICA,
LLC

       Defendant.
_____/

**PLAINTIFF'S *AGREED* MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS, APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL, AND APPROVAL OF THE PROPOSED NOTICE OF SETTLEMENT AND CLASS ACTION SETTLEMENT PROCEDURE AND MEMORANDUM OF LAW IN SUPPORT**

## I.      INTRODUCTION AND BACKGROUND

On March 26, 2025, Plaintiff, RICHARD SANTANA ("Plaintiff" or "Santana"), filed his Class/Collective Action Complaint for Damages and Demand for Jury Trial ("Complaint") in the United States District Court for the Southern District of Florida, Fort Lauderdale Division, on behalf of himself and others similarly situated. *See* D.E. 1. Plaintiff's initial Complaint alleges that Defendant, Another Broken Egg of America, LLC ("Defendant") violated the Florida Minimum Wage Act, Fla. Stat. § 448.110 ("the FMWA") and Fair Labor Standards Act ("FLSA") by failing to pay restaurant Servers the applicable minimum wages during their employment at Another Broken Egg restaurant locations in the State of Florida. Specifically, Plaintiff alleged that Defendant failed to provide sufficient notice of the tip credit under state law, required Servers to spend more than 20% of their workweeks performing non-tipped duties, and violated federal law by miscalculating Plaintiff's overtime rate. *See* D.E. 1. On May 30, 2025, Plaintiff, along with opt-in Plaintiffs, Pedro Martinez, Tatyana Galloway, Jordan Ciceron, and Stacy Isema filed their Consents to Sue under Fair Labor Standards Act. *See* D.E. 17; D.E. 17-1; D.E. 17-2.; D.E. 17-3;

D.E. 17-4; D.E. 17-5. On May 30, 2025, Plaintiff filed his Motion for Conditional Certification of FLSA Collective Action Pursuant to 29 U.S.C. § 216(b). *See* D.E. 19.

On April 23, 2025, Defendant filed its Motion to Dismiss Complaint *See* D.E. 6. On August 1, 2025, after all motions were fully briefed and pending, the Parties attended a mediation with experienced wage an hour mediator Carlos Burruezo, Esq. *See* D.E. 18. After a full day of mediation and several additional days negotiating material terms, the Parties successfully mediated the case and achieved a resolution. *See* D.E. 33.

Defendant continues to adamantly deny that it engaged in any misconduct in connection with wage and hour practices regarding its Servers, and further denies that it has any liability or engaged in any wrongdoing of any kind associated with the claims alleged in this case. Throughout the duration of this case, the Parties have actively engaged in document production, review, and analysis of various payroll and class information concerning the pay practices at the restaurant. The Parties exchanged detailed class-wide data concerning the claims and attended a Court ordered mediation. As a result of the August 1, 2025 mediation, and several hours of continued negotiations and conferrals in the days immediately following, the Parties were able to reach agreement on material terms on a class and collective-wide settlement of these claims and thereafter worked through preparing a settlement term sheet, written agreement, the instant motion, and other related filings. The Settlement Term Sheet became fully executed on September 18, 2025.

The Parties now present their Class and Collective Action Settlement Agreement ("Settlement Agreement") to this Court, which they believe is a fair, reasonable, and adequate resolution of a *bona fide* dispute for the Settlement Class. *See* Stipulated Class Action Settlement Agreement attached hereto as **Exhibit A**. Plaintiff seeks preliminary approval of the Settlement Agreement, which would resolve the claims of the proposed Settlement Class which consists of approximately 1,808 individuals and the proposed Settlement Collective which consists of approximately no more than 77 individuals. The Settlement Agreement satisfies all criteria for preliminary settlement approval. Accordingly, Plaintiff seeks approval of the Settlement Agreement, and requests that this Court enter an Order, substantially in the form attached as **Exhibit C**, that grants such relief.

## II.   THE PROPOSED SETTLEMENT

Attached to this motion as **Exhibit A** is a copy of the Settlement Agreement attached thereto. *See* **Ex. A**. The following summarizes the Settlement Agreement's terms:

### A. The Settlement Class and Collective

Because Plaintiff brought hybrid claims under both the FMWA and the FLSA, the case involves both class and collective action procedures. Plaintiff's FMWA claims are governed by class action procedures under Rule 23, while their FLSA claims involve collective action procedures, including those set forth in 29 U.S.C. §216(b). For purposes of settlement, the parties agree to the following Settlement Class, which will consist of:

> **All Servers who worked for Defendant at a corporate-owned Another Broken Egg location in the state of Florida from March 26, 2019, through the date of the order approving Plaintiff's Motion for Preliminary Approval of Class Action Settlement.**

The Settlement Class is comprised of approximately 1,808 Class Members. Although the parties have agreed to stipulate to class certification for purposes of settlement, the Defendant expressly reserves and retains its rights to contest class certification and/or final certification through trial should the parties' Settlement Agreement not be approved and/or is terminated or fails to become effective.

For purposes of settlement, the parties agree to the following Settlement Collective, which will consist of:

> **All servers who worked more than 40 hours in one or more workweeks for Defendant at Another Broken Egg corporate-owned locations throughout the state of Florida from March 26, 2022, through the date of the order approving Plaintiff's Motion for Preliminary Approval of Class Action Settlement.**

The Settlement Collective is comprised of approximately 77 Collective Members. Although the parties have agreed to stipulate to collective certification for purposes of settlement, the Defendant expressly reserves and retains its rights to contest collective certification and/or final collective certification through trial should the parties' Settlement Agreement not be approved and/or is terminated or fails to become effective.

### B. Payments to Class and Collective Members

The Settlement Agreement requires Defendant to pay up to Five Hundred Thousand Dollars and Zero Cents ($500,000.00). *See* **Ex. A**. The Parties will establish a single fund from which both the Class Members and Collective Members will affirmatively submit a Claim Form to receive settlement compensation. By returning the Claim Form, any Settlement Class Member who is a putative member of the Florida Overtime Collective Action will have thereby opted into

the Florida Overtime Collective Action for purposes of this settlement.

The Rule 23 Settlement Fund will cover a total of approximately 1,119,721.02 hours worked by the Rule 23 Settlement Class in the past 5 years. Each Rule 23 Class Member's estimated minimum share of the Rule 23 Settlement Fund will be calculated pursuant to the number of regular hours worked by the Class Member during the 5 years prior to the filing of the Complaint in this action, calculated to the best of the parties' ability based on Defendant's payroll data. *Id.* Each Rule 23 Class Member will be entitled to receive a net payment of $0.26 for each regular hour worked during the 5-year period.

The Section 216(b) Settlement Fund will cover a total of 407.38 overtime hours worked by the Section 216(b) Settlement Collective in the past 3 years. Each Section 216(b) Collective Member's estimated minimum share of the Section 216(b) Settlement Fund will be calculated pursuant to the number of overtime hours worked by the Collective Member during the 3 years prior to the filing of the Complaint in this action through the date the Court enters an order preliminarily approving this settlement, calculated to the best of the parties' ability based on Defendant's payroll data. Each Section 216(b) Collective Member will receive $4.53 for each overtime hour worked during the 3-year period.

These formulas and calculations are explained in further detail in Paragraph 3.4 of the Settlement Agreement. Further, by filing an approved Claim Form, the Class Member is thereby opting-in to the claim brought by Plaintiff pursuant to the FLSA and the collective action.

### C.  Individual Consideration Payments to Santana

The Settlement Agreement also contemplates an Individual Consideration Payment to Santana in exchange for a much broader employment-related release of any and all claims he may have against Defendant. Plaintiff and his counsel request approval of the payments in the amount of Ten Thousand Dollars ($10,000.00) to be paid to Santana, and Defendant has agreed to pay that amount, subject to Court approval. This payment would be in addition to any Settlement Payment that Santana receives as a Class or Collective Member in this matter.

### D.  Settlement Administration and Notice

The Parties have agreed that ILYM, Inc. will perform duties as Claims Administrator in this matter. The cost of administering the settlement is expected to be no more than $22,443.57. Defendant agrees to cooperate with the Claims Administrator to ensure that it has all of the information reasonably necessary to perform his tasks, as set forth in the Settlement Agreement.

The proposed Notice Packets and claims process provides that the Class Members will be informed of and given the opportunity to participate in this settlement by receiving the following documents: (1) a Class Action Settlement Notice which explains the terms and conditions of the Settlement to the Class Members (the "Class Notice") via U.S. Mail, the proposed form of which is attached to the Settlement Agreement as Exhibit 2 (Proposed U.S. Mail Notice Packet); (2) a Claim Form which the Class Member must complete and submit in order to participate in the Settlement, the proposed form of which is attached to the Settlement Agreement as Exhibit 1; and (3) a return envelope addressed to the Claims Administrator to allow the Class Member to return the Claim Form.  Further, the forms also directs that Class Members may contact Class Counsel with questions or to access forms and additional information.

The proposed Notice Packet and claims process includes all essential information about the lawsuit required under Rule 23 and 29 U.S.C. §216(b), including the persons affected, the nature of the Action, the possibility of, and method for, excluding themself from the settlement, or objecting to the settlement, and an explanation of how to obtain additional information relating to the Settlement from the Claims Administrator and Class Counsel.

### E.  Attorney's Fees and Costs

The Settlement Agreement provides that Class Counsel will move the Court for an award of attorney's fees and costs. Under the Settlement Agreement, Class Counsel will seek fees and costs in the amount of one hundred and sixty-six thousand six hundred and sixty-six dollars and fifty cents ($166,666.50) which represents thirty-three and a third percent (33.3333%) of the total settlement fund plus an additional maximum of Seven Thousand Dollars ($7,000.00) for reimbursement of litigation costs. Defendant agrees as part of the Settlement Agreement that it will not object to Class Counsel's request for fees and costs up to these specified amounts.

### F.  Reversion of Class Fund

Pursuant to Paragraph 2.5(A) of the Settlement Agreement, any amount of the settlement fund left after administration of the claims process will remain with Defendant.

### III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE STIPULATED CLASS ACTION SETTLEMENT AGREEMENT

### A.  Settlements Are Encouraged in the United States District Courts.

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving debts and uncertainties and preventing lawsuits."

*See, e.g., In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). Before a settlement may be approved, however, a number of prerequisites must be established. First, the Court must certify the settlement class. Fed. R. Civ. P. 23(c). Second, the Court must determine preliminarily whether the settlement is fair and adequate. *See, e.g., In Re Checking Account Overdraft Litig.*, 2011 WL 5873389 at *6 (S.D. Fla. 2011); Fed. R. Civ. P. 23(e)(2), (e)(1). As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy… favors settlements, particularly where complex class action litigation is concerned"); *Lynn's Foods Stores, Inc. v. United States*, 679 F.2d 1354 (11th Cir. 1982) (court approval in FLSA cases is favored "to promote the policy of encouraging settlement of litigation"); *see, also, Isby v. Bayh,* 75 F.3d 1191, 1196 (7th Cir. 1996); 2 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 (3d ed. 1992) (collecting cases). The Eleventh Circuit Court of Appeals also favors compromise and settlement of class action lawsuits. *See, e.g., In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that "public policy strongly favors the pretrial settlement of class action lawsuits"); Newberg 11.25 ("The compromise of complex litigation is encouraged by the courts and favored by public policy"). The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Leverso v. SouthTrust Bank of Ala.*, 18 F.3d 1531 (11th Cir. 1994). In exercising their discretion, courts should give "proper deference to the private consensual decision of the parties." *See, e.g., Torres v. Gristede's Operating Corp.*, 2010 WL 2572937 at *2 (S.D.N.Y. 2010).

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Id.* at § 21.632-34.  This procedure safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22 et seq.

At the preliminary approval stage, the Court's task is to evaluate whether the settlement is within the "range of reasonableness." 4 Newberg 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *See, e.g., Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149 at *2 (S.D. Fla. 2010). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See Manual for Complex Litigation,* Third 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* 11.25. A proposed settlement should be preliminarily approved if it "is 'within the range of possible approval', or, in other words, [if] there is 'probable cause' to notify the class of the proposed settlement." *See, e.g., Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895 at *5 (S.D. Fla. 2007) *quoting Armstrong v. Board of School Directors*, 616 F.2d 305, 312 (7th Cir. 1980); *Newberg* 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness… and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members); *Danieli v. IBM,* 2009 WL 6583144 at *4 (S.D.N.Y. 2009) (granting preliminary approval where the settlement "ha[d] no obvious defects" and the proposed allocation plan was "rationally related to the relative strengths and weaknesses of the respective claims asserted").

"Fairness is determined upon review of both terms of the settlement agreement and the negotiating process that led to such agreement." *See, e.g., Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116. "A court, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Canupp v. Liberty Behavioral Healthcare, Corp.*, 447 2011 WL 6003986 (11th Cir. 2011) *quoting Cotton v. Hinton*,

559 F.2d 1326, 1331 (5th Cir. 1977).

### B. Criteria for Preliminary Settlement Approval Under Rule 23 are Satisfied.

In deciding a motion for preliminary approval of a class action settlement and certification of a settlement class, the court must undertake two essential inquiries: (1) whether the Rule 23 requirements are satisfied; and (2) whether the proposed settlement is within the range of possible approval. *See, e.g., Lechuga v. Elite Engineering, Inc.,* 559 F.Supp.3d 736 (N.D. Ill. 2021).[1]

#### i. Preliminary Approval is Warranted Because Plaintiff Satisfies Each of the Rule 23 Requirements.

##### a. Numerosity

To satisfy Rule 23's numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). The proposed class here is comprised of 1,808 individuals, which is well over the number to satisfy Rule 23(a). *See Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members); *Seghroughni v. Advantus Restaurant, Inc.,* 2015 WL 390329 (M.D. Fla. 2015) (numerosity satisfied based on 87 class members); *Windheim, et. al. v. Tipsy Joe Corp., et. al.,* S.D. Fla. Case No. 0:22-cv-60278 (granting preliminary approval where there were 58 class members); *Mulvania v. Sheriff of Rock Island Cnty.,* 850 F.3d 849, 859-60 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement"); *see, also, Schmidt v. Smith & Wollensky, LLC,* 268 F.R.D. 323, 326 (N.D. Ill. 2010).

##### b. Commonality

The threshold for commonality under Rule 23(a)(2) is not high. "[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *See, e.g., Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009); *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same). Here, the commonality requirement is satisfied because there are multiple questions of law and fact that

---

[1] Federal courts throughout Florida routinely grant class certification of wage and hour claims under Florida state law. *See, e.g., Kubiak v. S.W. Cowboy, Inc.*, 2014 WL 2625181 (M.D. Fla. 2014) (certifying opt-out Rule 23 class for FMWA claims); *Lopez v. Hayes Robertson Group, Inc.*, 2013 WL 10561294 (S.D. Fla. 2013) (certifying opt-out Rule 23 class of FMWA claims regarding allegations of an illegal tip pool); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 280 F.R.D. 640 (M.D. Fla. 2012) (certifying Florida state wage and hour claims); *Rosario-Guerro v. Orange Blossom Harvesting*, 265 F.R.D. 619 (M.D. Fla. 2010) (same); *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970 (S.D. Fla. 2009) (same); *Mesa v. Ag-Mart Produce, Inc.*, 2008 WL 2790224 (M.D. Fla. 2008) (same).

center on Defendant's class-wide pay policies and practices relating to whether the proper notice and amounts related to the reduced Florida wage was paid to Servers – an issue that is common to the entire Settlement Class. *Williams-Green v. Alexander's Rests., Inc.*, Case No. 09-cv-5707, 277 F.R.D. 374 (N.D. Ill. 2011) ("[Plaintiff] has demonstrated that her claims . . . arise from a common nucleus of fact based upon standard conduct and, therefore, has satisfied the commonality requirement under Rule 23(a)(2)."). This requirement is satisfied in this case because all Class Members held the same Server position, were compensated in the same manner, and assert the same legal theory based on the alleged improper pay policies in Defendant's restaurants.

### c.    Typicality

"Typicality is closely related to commonality." *In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 342 (N.D. Ill. 2010) *citing Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998) (a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *Komberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984 (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiff contends that all 1,808 members of the Settlement Class were subject to the same alleged unlawful practices in Defendant's restaurants which results in the same alleged wage violations under the FMWA.

### d.    Adequacy of Representation

Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to the settlement class; and (2) whether the proposed class counsel has the competence to undertake the litigation at issue. *See Fabricant*, 202 F.R.D. at 314. Rule 23(a)(4) is satisfied here because there are no conflicts of interest between the Plaintiff and the settlement class, and Plaintiff has retained competent counsel to represent him and the settlement class. Class Counsel here regularly engages in wage and hour class litigation in several states across the country and other complex litigation similar to the present Litigation and have dedicated substantial resources to the prosecution of the Action. Further information concerning Class Counsel's credentials can be found in the Declaration of Michael V. Miller, Esq. of USA Employment Lawyers attached hereto as **Exhibit B**. *Id.* Notably, USA Employment Lawyers has previously

been named Class Counsel in several other wage and hour matters in South Florida and throughout the United States. Moreover, the Plaintiff and Class Counsel have vigorously and competently represented the settlement Class Members' interests in the Litigation and have obtained a resolution that benefits all members of the putative class. *See Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000).

### e.   Predominance and Superiority

Certification under Rule 23(b)(3) is appropriate if the proposed class meets two additional requirements: common questions of law or fact must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law… ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *See, e.g., Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010). Here, the predominance requirement is satisfied for settlement purposes because common questions present a significant aspect of the case and can be resolved for all settlement Class Members in a single common judgment. *See In re Checking Account Overdraft Litig.*, 2012 WL 4173458 at *3 (S.D. Fla. 2012); *Butler v. Am. Cable & Tel., LLC,* 2011 WL 4729789 at *7 (N.D. Ill. 2011) (superiority requirement met where "the cost of litigation would likely outweigh the benefit" of pursuing claims individually); *Curry v. Kraft Foods Global, Inc.,* 2011 WL 4036129 at *7 (N.D. Ill. 2011) ("Deciding each claim separately would be an extremely inefficient use of both judicial and party resources, and many individual class members would otherwise be unlikely to bring their claims.").

### ii.   Preliminary Settlement Approval is Warranted

In evaluating a class action settlement, courts in the Eleventh Circuit consider the six factors set forth in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Although the Court need not evaluate the *Bennett* factors in order to conduct its initial evaluation of the settlement, it may be useful for the Court to consider the criteria on which it will ultimately judge the settlement. The *Bennett* factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition

to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *See id.*

Here, all of the *Bennett* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval of the class action settlement.

### a.    Likelihood of Success at Trial

Although Plaintiff is confident that their case is very strong, it is not without risk. "Litigation inherently involves risks." *See In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F.Supp. 917, 934 (S.D.N.Y. 1969); *see, also, Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783 at *6 (S.D.N.Y. 2007).

A trial on the merits would involve significant risk as to both liability and damages, as Defendant likely would have asserted several substantive and procedural defenses. For example, although Plaintiff is confident he could show that Defendant was liable for violating federal and/or Florida law, Defendant asserts that they were always in compliance with federal and/or Florida law and filed a fully briefed motion to dismiss that was pending at the time resolution was achieved. Even if Plaintiff prevailed on the motion to dismiss, a jury could have determined that Defendant was not responsible for the wage violations at issue. The proposed settlement alleviates this uncertainty. This factor weighs in favor of preliminary approval.

### b.    Range of Possible Recovery and Range at Which Settlement is Fair

The relief sought in the settlement is reasonable and within the range of remedies permitted by law. Because "monetary relief is difficult to quantify, in evaluating a class settlement, the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *See, e.g., Williams v. Rickitt Benckiser LLC*, 2021 WL 8129371 at *34 (S.D. Fla. 2021). "While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail." *See Waters v. Cook's Pest Control, Inc.*, 2012 WL 2923542 at *13 (N.D. Ala. 2012); *see, also, Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery"); *In re: Newbridge Networks Securities Litig.*, 1998 WL 765724 at 82 (D.D.C. 1998) ("an agreement that secures roughly six to twelve percent of a *potential* recovery… seems to be within the targeted range of reasonableness").

Under Florida law, and the theories advanced in this case, the maximum amount each member of the putative class could recover is $3.02 per hour for each hour worked. Under the settlement, each Server is receiving a substantial portion of their alleged wage deficiencies under the FMWA. Under the Rule 23 Settlement, each Server will receive $0.26 for every single hour worked between March 26, 2019, through the entry of the preliminary approval order. *See* Exhibit A. When the Settlement here is taken as a whole, the relief proposed is fair, adequate, and reasonable when compared to the range of possible recovery in this action. Under this calculation formula, the Servers will a guaranteed recovery of more than 8.6% of their absolute best day in Court. *See* Exhibit A. This "middle of the road" recovery is fair and reasonable under the circumstances and should be approved by the Court. *See, e.g., Fata v. Pizza Hut of America, Inc.*, 2016 WL 7130932 (M.D. Fla. 2016) (Preliminarily approving Rule 23 class settlement where delivery drivers were to each to receive a total between $492.00 and $1,352.00 in unpaid wages); *see, also, Bennett*, 737 F.2d at 986 (holding that 5.6% recovery was fair and adequate in view of risks of further litigation and litigation objectives); *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d at 1346 ("Standing alone, **nine percent** or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims"); *Lipuma*, 406 F.Supp.2d at 1322-23 (finding that settlement recovery of 8.1% of possible damages was fair, adequate, and reasonable).

### c.      Litigation Through Trial Would be Complex, Costly, and Long

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiff seeks to avoid significant expense and delay and ensure a speedy, risk-free recover for the class. "Most class actions are inherently complex, and settlement avoids the costs, delays and multitude of other problems associated with them." *See In re Austrain & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000). This case is no exception, with approximately 1,808 Rule 23 class members and claims under and state law.

Although there has already been some discovery taken, additional discovery would be required to establish liability and damages, including several depositions of class members and Defendant, and several of Defendant's additional employees and managers. Further, Defendant would have likely opposed certification of the Rule 23 class had the matter not resolved, and may have sought to decertify same, even in the event that the Court ultimately certified a Rule 23 class. In addition, the Parties likely would have filed cross-motions for summary judgment on legal issues regarding the issues in this case, as well as defenses asserted in any forthcoming Answer. If

the Court denied the motions, a fact-intensive trial would be necessary to determine whether Plaintiffs were owed wages under Florida and/or federal law. Preparing for and putting on evidence at such a trial would consume tremendous amounts of time and resources and demand substantial judicial resources. Given the unsettled nature of the law at issue in the case, any judgment would likely be appealed, extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the third *Bennett* factor weighs in favor of preliminary approval.

### d. Reaction to the Settlement Has Been Positive

Although notice of the settlement has not yet issued to the class, Plaintiff has expressed his strong approval of the settlement. Moreover, the undersigned counsel expects that other Servers will express approval over the proposed terms of the class settlement in light of the amounts that will be recoverable from the Fund. After notice issues and Class Members have had an opportunity to weigh in, the Court can more fully analyze this factor.

### e. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly

The parties have completed enough discovery to recommend settlement. The proper question at this stage is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3rd Cir. 2004). "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement… but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d at 176. The parties' discovery here meets this standard. As discussed above, Defendant produced documentation and audits pertaining to their policies, payroll records, workweek information, and time records, as well as employee rosters. *See* Exhibit B. In addition, Plaintiff's counsel has conducted audits concerning the number of Servers employed by Defendant since 2019 based upon reasonable approximations from the Plaintiffs, and has been able to cross-reference documentation produced by Defendant in this case concerning the size and scope of the putative class. *See* **Ex. B**.

Based on these circumstances, the Parties were well equipped to evaluate the strengths and weaknesses of the case. *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while "cooperative," had

"been in no way collusive"); *see, also, Khait*, 2010 WL 2025106 at *4-5 (approving settlement where the parties exchanged payroll and time data and policies and procedures). This factor also weighs in favor of preliminary approval.

<h3 style="text-align:center">f.      Opinion of Class Counsel</h3>

Class Counsel is experienced in complex class action litigation, and has a substantial amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the Settlement. In Class Counsel's opinion, the Settlement is fair, reasonable, and adequate. *See* **Ex. B**. It is appropriate for the Court to place significant weight on the unanimously strong endorsement of this Settlement by Class Counsel. When experienced counsel supports the settlement, as he does here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litig.,* 164 F. Supp.2d at 1020; *see, also, Meyenberg v. Exxon Mobil Corp.,* 2006 U.S. Dist. LEXIS 97057 at *18 (S.D. Ill. 2006). In contrast, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Veizaga v. Nat'l. Bd. for Respiratory Therapy,* 1980 U.S. Dist. LEXIS 12670 (N.D. Ill. 1980) *citing Armstrong v. Bd. of School Directors of City of Milwaukee,* 616 F.2d at 315 (7th Cir. 1980); *see, also, Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1148-49 (8th Cir. 1999); *Grove v. Principal Mutual Life Ins. Co.,* 200 F.R.D. 434, 445 (S.D. Iowa 2001); *Windheim, et. al. v. Tipsy Joe Corp.*, S.D. Fla. Case No. 0:22-cv-60278-CMA at D.E. 55 (Judge Altonaga granting final approval of Rule 23 class settlement and naming Mr. Richards class counsel); *see, also, Sparks, et. al. v. Kyodai Sushi Rock Café, Inc., et. al.*, Clay County Circuit Court Case No. 2022CA001268 (Feb. 2, 2023) (granting preliminary approval of class action wage and hour restaurant claims and naming Mr. Richards class counsel); *Laughlin, et. al. v. Fresh-Mex & Co. Corp., et. al.*, Duval County Circuit Court Case No. 16-2023-CA-1249 (Mar. 14, 2023) (granting preliminary approval of class action wage and hour restaurant claims and naming Mr. Richards class counsel); *Conrey, et. al. v. Beach Boys of Ft. Lauderdale, LLC*, S.D. Fla. Case No. 0:22-cv-60843-HUNT (Judge Hunt granting conditional certification of FLSA collective action and naming Mr. Richards counsel for FLSA collective comprised of Servers and Bartenders).

<h3 style="text-align:center">g.      The Settlement is the Result of Arms' Length Negotiations Without Any Hint of Collusion</h3>

In determining whether a settlement was reached absent any collusion between the Parties, courts look to whether the settlement negotiation was "intense, vigorous, and at arms' length." *In*

*re Mexico Money Transfer Litig.,* 164 F. Supp.2d at 1020. The litigation and negotiation activities in this matter demonstrate the adversarial nature of this litigation. The fact that this settlement was reached during a Court-order mediation with an experienced wage and hour mediator supports the finding that there is no collusion behind the settlement. Such arms' length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Gillespie v. Equifax Info. Servs., LLC,* 2009 U.S. Dist. LEXIS 131242 at *10 (N.D. Ill. 2009). *See, e.g., Zolkos v. Scriptfleet, Inc.,* 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) *citing McKinnie v. JP Morgan Chase Bank, N.A.,* 678 F.Supp.2d 806, 813 (E.D. Wis. 2009).

## IV.  PRELIMINARY SETTLEMENT APPROVAL UNDER 29 U.S.C. § 216(b) IS ALSO WARRANTED

Similarly, under the FLSA, employees may settle their claims if the parties agree on the terms and the court approves the settlement as "a fair and reasonable resolution of a bona fide dispute over the FLSA provisions." *Lynn's Foods Stores,* 679 F.2d at 1353-1355. "Normally, a settlement is approved where it is the result of contentious arm's-length negotiations, which were undertaken in good faith by counsel and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Paredes v. Mansanto Co.*, 2016 WL 1555649, at *1 (N.D. Ind. 2016).

### A. The Proposed Settlement Agreement is Fair, Reasonable, and Adequate as Required by 29 U.S.C. § 216(b).

The Settlement Agreement's terms outlined above are fair and reasonable for the Parties. A bona fide dispute exists when an employee makes a claim that he or she is entitled to unpaid wages and when settlement requires resolution of the payment due. *Houston v. URS Corp.*, 2009 WL 2474055, at *9 (E.D. Va. Aug. 7, 2009). In reviewing the settlement of a plaintiff's FLSA claims, the district court must "ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime." *Rotuna v. W. Customer Mgmt. Grp. LLC*, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.*  Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as an indicia of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

A bona fide dispute exists in this case as the liability and damages issues were vigorously contested.  The Parties disagree as to whether liability exists in this case and, if liability were proven, the extent of the damages. Specifically, among other disputes, the parties disagree on Plaintiff's ability to prove liability (individually and on a class/collective basis), a willful violation of the FLSA, and the amount/extent/scope of damages, including any award of liquidated damages and/or civil penalties due to the members of the Settlement Class.  Although both parties continue to believe in the merits of their respective claims and defenses, given the information learned throughout discovery, the time and expense associated with continuing to litigate this matter, and the uncertainty of dispositive motion practice and trial, the parties agree that a compromise is appropriate at this stage of the litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching."). Payments to Settlement Class Members are directly proportionate to amounts allegedly due to them under the described methodology, less amounts commensurate with the risk inherent in further litigation as discussed above. These amounts constitute a reasonable and adequate recovery, and the parties' evaluation of the actual timekeeping and payroll records and the risks of continued litigation.

## B. The Settlement Agreement was Reached Through Extensive Arm's Length Negotiations.

Despite the Parties' divergent views regarding Plaintiff's assertions in their Complaint, they were able to work toward a compromise in this matter and negotiate at arm's length to resolve the claims of Plaintiff and Settlement Class Members — as set forth above pursuant to the Fed. R. Civ. P. 23 standards.

## C. The Settlement Fund Provides Adequate Relief for the Settlement Class and the Proposed Allocation Method Equitably Divides the Settlement Funds.

The proposed settlement allocation, specified within the Settlement Agreement, explains the allocation calculation process for each Settlement Class Member. This is a reasonable recovery in light of the amount of the alleged damages from an alleged invalid tip pool, the type of claims in dispute, and the risks in the case, including the time and expense of heavily-fact based discovery and in briefing dispositive motions and the risk that Plaintiff, any opt-ins, and the Settlement Class

members would (if prevailing at summary judgment) receive nothing after a complex and lengthy trial. *See Mangone v. First USA Bank*, 206 F.R.D. 222, 226 (S.D. Ill. 2001) (citing *Isby*, 75 F.3d at 1199 (where the "continuation of the litigation would require the resolution of many different and complex issues, would entail considerable additional expense, and would likely involve weeks, perhaps months of trial time," the Seventh Circuit upheld trial court's conclusion that "the settlement represented an outcome at least comparable, if not superior, to that which plaintiffs might achieve by proceeding to trial."). The settlement allocation was calculated by Class Counsel, directly proportionate to the number of hours worked by Servers as explained in the Settlement Agreement.

## V.     PROPOSED NOTICE PROGRAM IS FAIR AND ADEQUATE

The content of the proposed Notice, which is attached to the Settlement Agreement, fully complies with due process and Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B), the notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Notice satisfies each of these requirements. *See* Ex. A. The Notice Program and claims process set forth in the Settlement Agreement provides proper notice to affected individuals. "Rule 23(e)(1)(B) requires the Court 'to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit.* at 21.312. Many of the same considerations govern both certification and settlement notices. In order to protect the rights of absent class members, a court must require the best notice practicable to class members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

Plaintiff proposes to send the Class Notice attached to the Settlement Agreement as Exhibit 2 to all Class Members via first-class U.S. Mail, along with a return envelope addressed to the Claims Administrator to facilitate Class Members' submission of the Claim Form. The Notice

Packet will also contain a QR code for Class Members to access a website established by the Claims Administrator to inform them of the terms of the settlement and submit a Claim Form. The Notice documents will be provided in both English and Spanish. Courts have approved notice procedures with documents similar to the ones proposed by the Parties here because they are in a format which is easy for the Class Member to comprehend. Rule 23 requires that a court facilitate the "best notice" to class members that conveys the needed information "clearly and concisely in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). The notice proposed by the Parties is likely to be read and understood by Class Members. In addition, if the Class Members have any questions regarding the case or the Settlement, they are provided and encouraged to contact the Claims Administrator who happens to also be Class Counsel. Accordingly, the Parties' proposed notice and claims process meets the requirements of Rule 23 and 29 U.S.C. §216(b), and Plaintiff requests that the Court approve the forms attached thereto.

## VI.   INDIVIDUAL PAYMENTS SHOULD BE APPROVED

The Settlement Agreement provides for Individual Consideration to be paid to Plaintiff in exchange for them signing a release for employment-related claims that is much broader than any release that will apply to the class. This type of payment has previously been approved by the Courts. *See, e.g., Baja, et. al. v. Costco Wholesale Corp.,* S.D. Fla. Case No. 0:21-cv-61210-AHS at D.E. 56, n.1 (Dec. 20, 2022) (approving a general release payment in class action settlement). Plaintiff and his counsel request that Individual Consideration Payment to Plaintiff in the amount of Ten Thousand Dollars ($10,000.00) be paid. This payment would be in addition to any settlement payment that Plaintiff will receive in this matter.

## VII.   CLASS COUNSEL'S REQUEST FOR ATTORNEY'S FEES AND COSTS SHOULD BE APPROVED

The FLSA and FMWA provide that reasonable attorney's fees and costs shall be awarded to prevailing plaintiffs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); Fla. Stat. § 448.08. If the Court grants approval of the settlement, Plaintiff and the Class Members will be prevailing parties, because they will have an award entered in their favor. Defendant has agreed to not oppose Class Counsel's request for fees which represents 33.3333% of the settlement fund plus an additional $7,000.00 for reimbursement of costs that will be incurred. *See* **Ex. A**. Class Counsel thoroughly researched the potential claims,

reviewed voluminous records, conducted interviews, engaged in negotiations, and participated in a settlement conference. Moreover, the amount of attorney's fees and costs Defendant has agreed to pay does not include compensation to Class Counsel for any of the fees incurred in finishing this settlement, which will take at least dozens of hours because he will continue to advise and field questions and inquiries from the Class Members, and prepare a motion for final approval of the class settlement. Given that there are approximately 1,808 Class Members, additional fees are likely.

The proposed settlement brings substantial value to Class members. Each Class Member will benefit and share in the $500,000.00 settlement fund that compensates them for the claims alleged in this case. The fact that this settlement yields a significant monetary recovery without the uncertainty or risks of trial and appeals qualifies this settlement as an outstanding result. The recovery obtained for these Class Members meets or exceeds results obtained in similar cases. *See Williams-Green, et. al. v. J. Alexander's Restaurant, Inc.*, 277 F.R.D. 374 (N.D. Ill. 2011) (approving class settlement for servers); *Starr, et. al. v. Chicago Cut Steakhouse, LLC*, No. 12-cv-4416 (approving class settlement for servers where $50,000.00 covered payments made to 566 servers).

Furthermore, the release that the Class Members will agree to in this settlement is limited only to their unpaid wage claims against Defendant and the Released Parties. Thus, any claims a Class Member may have, other than those which were or could have been asserted in this litigation, remain unaffected. The absence of a general release for the Class Members (excluding the named Plaintiff) exemplifies the results achieved for the class. *See Ramah Navajo Chapter v. Babbitt,* 50 F.Supp.2d 1091, 1103-04 (D.N.M. 1999) (noting that the limited, rather than general, nature of the release was further evidence of an exceptional result in favor of class members). Accordingly, Class Counsel requests that the Court grant their unopposed request for attorney's fees and costs in the amount of $166,666.50. *See Williams-Green,* No. 09-cv-5707, 277 F.R.D. 374 (N.D. Ill. 2011) (Magistrate Judge Cole approving attorney's fees in the amount of 40% of the class fund in class action settlement in wage and hour case).

## VIII.   SCHEDULING A FINAL FAIRNESS HEARING IS APPROPRIATE

The last step in the settlement approval process is a final fairness hearing at which the Court may hear all evidence, objections, and argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may explain the terms and conditions of the Settlement

and offer arguments in support of final approval. In addition, Class Members, or their independent counsel, may be heard in support of or in opposition to the Settlement. The Court can determine at the Final Fairness Hearing whether the Settlement should be approved, and whether to enter a Final Approval Order and judgment under Rule 23(e).  The Final Approval Hearing should be scheduled no earlier than 45 days after the close of the Notice period to allow Defendants sufficient time to satisfy the notice requirements of the Class Action Fairness Act requirements set forth in 28 U.S.C. §1715.

## IX.    CONCLUSION

For the reasons set forth above, the Court should, most respectfully, preliminarily approve the Class and Collective Action Settlement reached by the Parties, conditionally certify the settlement class, appoint Plaintiff's counsel, USA Employment Lawyers – Jordan Richards PLLC, Jonathan S. Minick, P.A., Michael V. Miller, Esq., Jonathan S. Minick, Esq., and Jordan Richards, Esq. as Class Counsel and Settlement Administrator, approve the Settlement Notice, and enter the Proposed Order attached hereto.

WHEREFORE, Plaintiff, RICHARD SANTANA, respectfully requests that this Honorable Court certify the following class of similarly situated Servers:

> **All Servers who worked for Defendant at a corporate-owned Another Broken Egg location in the state of Florida from March 26, 2019, through the date of the order approving Plaintiff's Motion for Preliminary Approval of Class Action Settlement.**

Plaintiff further requests that the Court conditionally certify the following collective of similarly situated Servers:

> **All Servers who worked more than 40 hours in one or more workweeks for Defendant at Another Broken Egg corporate-owned locations throughout the state of Florida from March 26, 2022, through the date of the order approving Plaintiff's Motion for Preliminary Approval of Class Action Settlement.**

Plaintiff further requests that the Court enter an Order consistent with the Proposed Preliminary Approval Order attached hereto and grant full relief sought within this agreed Motion.

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(a)(3)

Pursuant to S.D. Fla. L.R. 7.1(a)(3), prior to the filing of the instant motion, the Parties conferred and agree to the relief sought herein.

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS-**
**JORDAN RICHARDS, PLLC**
1800 SE 10th Ave, Suite 205
Fort Lauderdale, Florida 33316
Ph: (954) 871-0050
*Co-Counsel for Plaintiff*

By:  */s/ Michael V. Miller*
    MICHAEL MILLER, ESQUIRE
    Florida Bar No. 64005
    JORDAN RICHARDS, ESQUIRE
    Florida Bar No. 108372
    *Michael@usaemploymentlawyers.com*
    *Jordan@jordanrichardspllc.com*

**JONATHAN S. MINICK, P.A.**
169 E. Flagler St. Suite 1600
Miami, Florida 33131
Ph: (786) 441-8909
*Co-Counsel for Plaintiff*

By: */s/ Jonathan S. Minick*
    JONATHAN S. MINICK, ESQUIRE
    Florida Bar No.: 88743
    *jminick@jsmlawpa.com*

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF and served on

Defendant's Counsel on November 13, 2025.

        By:  */s/ Michael V. Miller*
        MICHAEL V. MILLER, ESQUIRE
        Florida Bar No. 0064005

## SERVICE LIST

Matthew J. Gagnon, Esq.
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
155 N. Wacker Drive, Suite 4300
Chicago, IL 60606-1731

matthew.gagnon@ogletree.com

Daniel E. Kalter, Esq.
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
100 North Tampa Street, Suite 3600
Tampa, FL  33602

daniel.kalter@ogletree.com